**State ex. rel. Matthew Hubley,**
**Petitioner Below, Petitioner,**

**vs.)  No. 19-0211** (Wood County 14-P-155)

**Karen Pszczolkowski, Superintendent,**
**Northern Correctional Facility**
**Respondent Below, Respondent**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Matthew Hubley, by counsel Reggie R. Bailey, appeals the Circuit Court of Wood County's February 7, 2019, order denying his amended petition for a writ of habeas corpus. Respondent Karen Pszczolkowski, Superintendent, Northern Correctional Center, by counsel Scott E. Johnson, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2009, petitioner, a co-worker of N.P., was invited by N.P. to stay temporarily at N.P.'s home where N.P. lived with his girlfriend, E.S., and her two children, six year old, R.S., and two year old, B.S. (collectively "children").[1] On the evening of his third night at N.P.'s home, petitioner was home alone with E.S. and her children, when R.S. reported to E.S. that, "[t]he guy in the living room won't stop touching me[.]" R.S. indicated that when she was left alone with petitioner, petitioner touched her vagina and buttocks. Thereafter, E.S. took the children into her bedroom and called N.P. to return home. N.P. returned home and spoke to E.S. and R.S. Thereafter, N.P. asked petitioner to leave the home and petitioner left. Petitioner stayed at N.P.'s home for

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

approximately two and one-half days. During the time petitioner resided at N.P.'s home, no other adult male (other than N.P.) stayed in the home.

Over the course of his time at N.P.'s home, petitioner was left alone on multiple occasions for short periods of time with R.S. and B.S. Specifically, on the first evening petitioner was at N.P.'s home, he was left alone with the children in N.P.'s vehicle while E.S. and N.P. went into the home of N.P.'s brother. The following night, petitioner was again left alone in the vehicle with the children, so that E.S. and N.P. could speak to E.S.'s brother. Further, it was also reported that petitioner was left alone in the vehicle with the children while E.S. and N.P. went into the grocery store.

Following R.S.'s report of abuse to E.S., E.S. called the police and R.S. was taken to the emergency room ("ER") of a local hospital where she was found to have no physical injuries. After the initial examination was completed, R.S. was referred to the Child Advocacy Center at Charleston's Women's and Children's Hospital for further examination. During the second examination, R.S. was interviewed by a social worker, Maureen Runyon ("Ms. Runyon"), who is "specially trained in forensic interviewing techniques" and worked in conjunction with the examining pediatrician, Dr. Joan Phillips ("Dr. Phillips"). Ms. Runyon disclosed the findings of her interview with R.S. to the investigating officer, Trooper Jason Kocher of the West Virginia State Police, which led to the arrest of petitioner.

Ultimately, petitioner was charged in an eight-count indictment involving two different victims. However, at the request of petitioner, a motion to sever was granted and petitioner was tried first on the three counts of first-degree sexual abuse perpetrated against R.S. Petitioner's jury trial began in October of 2010. R.S., E.S., Dr. Phillips, Trooper Kocher, Ms. Runyon, petitioner's expert, and petitioner testified at trial.

Outside of the presence of the jury, prior to the first trial witness being called by the State, the State requested that the victim's advocate, Tiffany Kiger ("Ms. Kiger"), be allowed to sit in the courtroom, behind the State's counsel, so that R.S. could see Ms. Kiger when she testified. Over petitioner's objection, the circuit court granted the State's request and stated:

> I guess I don't see any prejudice to the defendant, because we want the victim to feel as comfortable in this courtroom as possible and to be as calm as possible, because a calm witness, regardless of whether it's a victim or someone else, a calm witness is hopefully going to be better able to answer questions and be responsive to questions.

E.S. was called as the first trial witness and testified that she never heard R.S. refer to petitioner by his proper name. Instead, R.S. called petitioner Tony. E.S. explained that a different person by the name of Tony Lewis had stayed in N.P.'s home for ten days in either June or July of 2008, but he was not in the home at the time of the 2009 incidents. E.S.'s testimony also established that when R.S. reported the abuse to her, the child pointed to the next room when E.S. asked who had done the touching. E.S. went on to explain that petitioner was in the next room, and no one other than petitioner, herself, and the two children were in the home at that time.

2

When called by the State to testify, R.S., who was only eight years old, provided minimal details of what had happened. The child testified that someone touched her private parts, which she demonstrated by pointing to an area on a drawing of a female child, but R.S. did not identify any individual as the person who touched her. R.S.'s testimony was that the touching occurred once and that a male had done it. The child's most frequent answer to the questions posed by the State was that she could not remember. Petitioner's trial counsel did not cross-examine the child and affirmatively indicated that he had no questions for her.

Ms. Runyon was called as the State's next witness and began by explaining her responsibilities at the Child Advocacy Center. She stated that she interviewed the child victims to determine what happened and "to get as much information and detail about that so that we can make sure that the child gets into whatever services or counseling or therapy, any kind of medical care that they need." Ms. Runyon recalled that during her interview with R.S., the child disclosed that "[t]his guy one time we were in the car and my mommy told him to sit with us, and he touched me right there[,]" and pointed to her vagina and said, "[r]ight there and right there," and she put her hand behind her and pointed to her bottom. R.S. further recalled, and related to Ms. Runyon, that as R.S. was sitting in the backseat of the car between petitioner and B.S., petitioner moved his hand "as if to insert it down inside her pants." R.S. stated that "the touching didn't feel good and that '[i]t kind of tickled[,]'" but that she did not laugh. When Ms. Runyon asked R.S. the name of the man who touched her, R.S. replied, "I call him Tony, but his real name isn't Tony." R.S. indicated that she knew the man who touched her was N.P.'s co-worker.

The State next called R.S.'s treating pediatrician at Women's and Children's Hospital, Dr. Phillips, to testify at trial. Dr. Phillips established that there were no physical findings of abuse upon her examination of R.S., but went on to state that her diagnosis of R.S.'s sexual abuse was made by "look[ing] at the child in total. [W]e look at the child's statements, we look at the child's medical exam and evaluation, and then ... make a diagnosis."

The investigating officer, Trooper Kocher, was next called as a witness for the State and testified that he "mirandized" petitioner.[2] Specifically, Trooper Kocher testified that "I had already located [petitioner] and I had previously [m]irandized him anyway, and then I confronted him with some of the information that [R.S.] had alleged to both me and her mother." Petitioner's counsel did not object. Immediately following this statement, the circuit court stopped the proceeding and excused the jury. The court advised the State "[y]ou now have before the jury that the [petitioner] was mirandized" and recalled that this was the "third trial where such a 'screw-up' had occurred." The State then advised the Court that it was attempting to elicit from Trooper Kocher why petitioner was not arrested the night he was interviewed. The court responded, "[w]ell, why don't you use some leading questions to see if [petitioner's trial counsel] objects." Petitioner's counsel did not request a mistrial or a curative instruction. The jury then returned to the courtroom, and the examination of Trooper Kocher continued.

Trooper Kocher testified that he was not able to locate a person by the name of Tony who worked with petitioner, as had been described by R.S. He further testified as to information he

---

[2]*See Miranda v. Arizona*, 384 U. S. 436 (1966).

received from his interviews with R.S. and E.S. and explained that petitioner was not arrested until Trooper Kocher received "the information R.S. related to Ms. Runyon."

Petitioner took the stand in his own defense and denied the allegations against him. After petitioner's cross-examination, the jury left the courtroom and the judge asked petitioner if "he had presented all the evidence that he wished to present." Petitioner responded, "I guess" and sought permission to speak with his trial counsel, which the court allowed. After the conference with his counsel, petitioner "indicated that he was not satisfied with his direct examination" and the court permitted petitioner to "retake the stand."

During his second cross-examination, after answering a direct question, petitioner pontificated that "[a]nd something that has not been explained …", which drew an immediate objection from the State's counsel as there was no question posed to the witness. The following exchange ensued:

THE COURT: Sustained. You need to answer the question that's asked.

THE WITNESS: You asked me why I think –

THE COURT: Sir! Any other questions?

THE WITNESS: He asked me a question. He asked me a question. He's saying I –

THE COURT:  Any other questions, Mr. [State's attorney]

STATE'S ATTORNEY:  No, your honor.

Ultimately, the jury found petitioner guilty of one count of first-degree sexual abuse for which he was sentenced to five to twenty-five years in prison with credit for time served. Petitioner filed a motion for a new trial arguing, in part, that the State was dilatory in failing to disclose exculpatory evidence, i.e., the existence of Tony Lewis, who had previously stayed in the home with the child. In his motion for a new trial, petitioner's counsel advised that he chose not to object to the State's "mirandizing" references at trial because he did not wish to bring attention to them.

A hearing was held on the motion for new trial on April 7, 2011, and was subsequently denied by the court. Specifically, the court found that petitioner "had not presented any evidence as to Tony Lewis in the motion for a new trial that would otherwise contradict the trial testimony of [ E.S. and] that any claim was simply speculation." Petitioner then filed a direct appeal before this Court and, by memorandum decision filed November 8, 2012, this Court affirmed his conviction and sentence. *See State v. Matthew Jacob Hubley*, No. 11-0258, 2012 WL 5471404 (W. Va. Nov. 8, 2012)(memorandum decision).

Thereafter, petitioner filed a petition for a writ of habeas corpus, which was later amended with the assistance of counsel. In his petition, petitioner alleged this his trial counsel was ineffective in seven respects: 1) referencing the petitioner being mirandized in his opening statement; 2) failing to move for a mistrial when Trooper Kocher testified that petitioner had been

4

mirandized; 3) failing to cross-examine the victim, R.S.; 4) failing to call N.P.'s brother, B.P., as a trial witness; 5) failing to request a continuance upon learning of Tony Lewis; 6) failing to investigate Tony Lewis; and 7) failing to re-examine petitioner on direct testimony at trial to allow petitioner to clarify his responses.

Petitioner further alleged that his appellate counsel were ineffective in failing to include a hearing transcript in the appendix for petitioner's direct appeal and by failing to raise, as an issue on appeal, the victim's advocate being allowed to sit in the courtroom during R.S.'s trial testimony. Additionally, petitioner argued that he was not afforded a fair trial as the trial judge was biased against him, with such bias being displayed during voir dire, during the testimony of Trooper Kocher, and during petitioner's re-cross-examination. Petitioner also averred that his conviction was against the weight of the evidence and asserted cumulative error. An omnibus hearing was held on July 31, 2017. Petitioner and his trial counsel testified at the omnibus hearing.

By order entered February 7, 2019, the circuit court denied petitioner's amended petition for a writ of habeas corpus. In denying the petition, the court addressed, in detail, the numerous grounds on which petitioner alleged that his trial and appellate counsel were ineffective and found that none of the grounds raised by petitioner established that his counsel fell below an objective standard of professional competence or that an error, if such did occur, was sufficient to have legally prejudiced petitioner. It is from the circuit court's February 7, 2019, order denying petitioner's petition for a writ of habeas corpus that petitioner now appeals.

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex. rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner asserts six assignments of error arguing that the circuit court erred in finding that petitioner's trial and appellate counsel were not ineffective. Further, petitioner argues that his habeas counsel was ineffective in failing to call and question appellate counsel regarding their preparation and argument before this Court and in failing to produce the audio recording at trial to demonstrate the trial judge's tone and attitude in "cutting" petitioner's testimony at trial.

Our review of the record supports the circuit court's decision to deny petitioner's amended petition for a writ of habeas corpus. Five of the six arguments advanced by petitioner were thoroughly addressed by the circuit court in its order denying petitioner habeas relief. The only assignment of error that was not addressed by the circuit court was petitioner's argument that his habeas counsel was ineffective, which this Court declines to address. It is the general rule of this Court "that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Further, as we noted in *Watts v. Ballard*, 238 W. Va. 730. 735 n.7, 798 S.E.2d 856, 861

5

n.7 (2017)(*quoting McNemar v. Ballard*, No. 11-0606, 2012 WL 5990127, at *5 (W. Va. Nov. 30, 2012)(memorandum decision), "the preferred way of raising ineffective assistance of habeas counsel is to file a subsequent petition for a writ of habeas corpus raising the issue in the court below." As petitioner did not address the alleged ineffectiveness of his habeas counsel below, the issue is not properly before us.

As the circuit court's order includes detailed and well-reasoned findings and conclusions as to the remaining specific assignments of error raised by petitioner on appeal and because we find no clear error or abuse of discretion in the circuit court's order or the record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's February 7, 2019, "Final Order" to this memorandum decision.[3]

For the foregoing reasons, we affirm the circuit court's February 7, 2019, denial of petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** December 7, 2020

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

---

[3]Given the sensitive facts of the instant case, the February 7, 2019, order has been redacted to remove references to the identities of those involved in the case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

6

IN THE CIRCUIT COURT OF WOOD COUNTY, WEST VIRGINIA

19-0211

STATE OF WEST VIRGINIA, EX REL.,
MATTHEW J. HUBLEY,
          Petitioner,

vs.

MARVIN C. PLUMLEY, WARDEN,
HUTTONSVILLE CORRECTIONAL CENTER,
          Respondent.

Case No. 14-P-155
Robert A. Waters, Judge

ENTERED
O.B. No.
Page

FEB 0 7 2019

CAROLE JONES
CLERK CIRCUIT COURT

## FINAL ORDER

### Findings of Fact and Conclusions of Law

#### A. Preliminary Findings

The Court would find as a preliminary matter that the Court has jurisdiction over this matter pursuant to West Virginia Code §53-4A-1 *et seq.* The Petitioner, following a jury trial, was adjudged guilty pursuant to a jury verdict of guilty to the felony offense of First Degree Sexual Abuse by order of the Wood County Circuit Court entered January 18, 2011 in case 09-F-167. The Petitioner is currently serving an indeterminate sentence of not less than five nor more than twenty-five years in the custody of the West Virginia Division of Corrections at the St. Mary's Correctional Center. Furthermore, all of the claims set forth in the Petition are alleged to implicate Constitutional Rights as required by the West Virginia Code. The Court has taken judicial notice of the court file in 09-F-167 and will consider the relevant materials therein in support of the findings made within this order.

#### B. General Standard

The Court would find as a matter of law that the general standard applicable to an adjudication of this Petition is as follows. The burden of proof in Habeas Corpus actions rests with the Petitioner, with the standard of proof requiring generally that allegations be proven by a preponderance of the evidence. *Stanley v. Dale*, 171 W.Va 192, 194 (1982). The types of claims that may be litigated through this type of petition are also limited to errors which implicate Constitutional violations, as opposed to ordinary trial errors. Syl. Pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va 129 (1979). When dealing with ineffective assistance of counsel claims, West Virginia courts are to follow the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984): 1) counsel's performance was deficient under an objective standard of reasonableness; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl Pt. 5, *State v. Miller*, 194 W.Va 3 (1995). "[I]n deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington* [citations omitted] and *State v. Miller* [citation omitted], but may dispose of such a claim based solely on a petitioner's failure

FEB 0 8 2019 COPIES MAILED/DELIVERED
AS DIRECTED

to meet either prong of the test." *State ex. rel. Edgell v. Painter*, 206 W.Va 168 (1999) (quoting *State ex. rel. Daniel v. Legursky*, 195 W.Va 314 (1995)).

Expanding upon the first part of the *Strickland* test, "when reviewing counsel's performance, courts must determine whether the identified or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at Syl Pt. 6. "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics, and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of the accused." Syl Pt. 21, *State v. Thomas*, 157 W.Va 640 (1974). The Supreme Court noted in *Miller* that:

> "What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess. Obviously, lawyers always can disagree as to what defense is worthy of pursuing such is the stuff out of which trials are made."

194 W.Va at 16. Also on the subject of trial strategy, the Supreme Court noted in a different case that "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *State ex. rel. Daniel v. Legursky*, 195 W.Va 314, 328 (1995). Habeas counsel "with luxury of time and the opportunity to focus resources on specific facts of a made record, inevitably will identify shortcomings in the performance of prior counsel." *Miller* at 17. Finally, to put the finest point possible on the issue, the Supreme Court has also noted that "[t]he Court will not use hindsight and second-guessing of Counsel's decisions to elevate a possible mistake into an error of constitutional proportion." Jenkins v. Ballard, 2016 W.Va LEXIS 264, 2016 WL 1455611 (2016) (citing Syl. pt. 4, *Legursky & State ex. rel. Edgell v. Painter*, 206 W.Va 168, 172 (1999)). In reference to the second prong of the test set forth above, the Petitioner must demonstrate that there is a "reasonable probability" that, absent any errors in his representation, the jury would have reached a different conclusion as to his guilt or innocence. *Miller* at 33 (citing *Strickland* at 694).

Claims are also barred in the Habeas Corpus context where they have been fully and fairly litigated in a previous proceeding and a final adjudication of the issue was handed down. *See* West Virginia Code §53-4A-1(b) & *Losh v. McKenzie*, 166 W.Va 762, 764 (1981). In other words, if an issue was decided on the merits in a direct appeal from the same conviction being attacked in the Habeas Corpus proceeding, that issue is barred in the Habeas Corpus proceeding from being raised again.

Finally, the Petitioner has the burden to advance arguments of law and/or fact in support of each and every ground raised within his petition. The same is clearly true on direct appeal, when the West Virginia Supreme Court has stated that "[I]ssues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. Lilly*, 194 W.Va 595, 605 (1995). The same analysis has been adopted by the

Supreme Court in the context of pleading a defense of laches before a Family Law Master in *State of West Virginia, Department of Health and Human Resources, Child Advocate Office v. Robert Morris N.*, 195 W.Va. 759 (1995), where the Court stated that "A skeletal argument, really nothing more than an assertion, does not preserve a claim…Judges are not like pigs, hunting for truffles buried in briefs." (citations omitted). *Id.* The Court believes that taking this precedent, which applies to a trial court level situation rather than an appellate situation, and reading it in conjunction with the general burden of proof incumbent upon a Petitioner in the context of a petition for habeas corpus relief, stands for the proposition that the Petitioner must advance the ball if it is to be advanced at all. If he fails to do so, the Court may properly refuse to even consider such "skeletal arguments."

### C. Ineffective Assistance of Counsel—Eric K. Powell

The Petitioner first raises various claims of ineffective assistance relative to his trial counsel, Eric K. Powell. The Court will deal with these claims in the order in which they were raised in the Petition, and all of these claims will be dealt with under the same heading. The Court would find as a matter of law that all claims of ineffective assistance relating to Mr. Powell's representation of the Petitioner do implicate the Petitioner's Constitutional Rights, namely his Sixth Amendment Right to Counsel pursuant to the United States Constitution and Article III, Section 14 of the West Virginia Constitution, and therefore are cognizable in this Habeas Corpus proceeding.

First, the Petitioner complains that trial counsel mentioned during his opening statement that the Petitioner was "*Mirandized*" and thus brought "unnecessary attention" to the fact that the Petitioner "had been placed under arrest and was in custody." The Court would find that trial counsel Mr. Powell did make mention during his opening statement to the jury that the Petitioner was "*Mirandized*." However, the Court would also find that the record at trial is very clear that the Petitioner was not placed under arrest at that time. Indeed, the evidence was very clear at trial that the Petitioner was not placed under arrest until several days later after the minor victim was interviewed by Maureen Runyon at the Women and Children's Hospital in Charleston, West Virginia. The Court would further find that this mention of *Miranda* during the opening statement was a strategic decision by Mr. Powell, one that not only attempted to bolster the credibility of the Petitioner's out-of-court denial of any wrongdoing, but also to draw attention to the fact that the Petitioner was not arrested by Trooper Kocher after the victim's initial disclosures. This argument sought to impair the credibility of the State's case, namely the Trooper's investigation of the case, by highlighting for the jury that the State did not arrest the Petitioner until several days after the initial disclosure. This argument was paired with attacks on the credibility of Maureen Runyon and her interview process, and both arguments were part and parcel of the trial counsel's strategy. Therefore, based on the standard discussed previously, the Court would find that this decision did not run afoul of the first prong of the *Strickland* test. Regardless, these actions also did not run afoul of the second prong. It cannot be said that these comments were prejudicial at all, let alone extensive and far-reaching enough to taint the entire record. As mentioned above, this comment likely served to strengthen what the Court would find was a viable argument to make to the jury.

Second, the Petitioner complains that trial counsel failed to move for a mistrial or failed to move that Trooper Kocher's comments relating to *Miranda* be stricken from the record. The Court finds that Trooper Kocher did testify to the fact that the Petitioner was *Mirandized* on January 9, 2009. The Court would further find that trial counsel did not object to this testimony. Nor did trial counsel move for a mistrial or move to strike this testimony. However, as mentioned above, this testimony served to strengthen a viable argument put forth by trial counsel at trial. Therefore, this omission and the arguments relating thereto from the Petitioner do not satisfy either prong of the *Strickland* test.

Third, the Petitioner complains that trial counsel failed to cross-examine the minor victim, R.S., prior to the Court ruling her unavailable as a witness. The Court would find that trial counsel did not ask any questions of R.S., even though the Court did allow trial counsel the opportunity to cross-examine. Trial counsel candidly admitted this fact at the omnibus evidentiary hearing held in this matter. However, the Court would further find that R.S. failed to identify or implicate the Petitioner in any way during her testimony. When given the opportunity to identify the perpetrator, R.S. looked around the room at everyone present, including the Petitioner, and failed to identify him at the perpetrator. Therefore, there was little to no adverse testimony in the record from R.S. to impeach, refute, or clarify. Indeed, Mr. Powell testified at the evidentiary hearing that he refrained from asking any questions of R.S. due to a concern that further questioning may allow R.S. the opportunity to provide responses which were adverse to his client. Furthermore, R.S.'s testimony as it stood following direct examination by the State supported another argument advanced by trial counsel as part of the overall theory of the case advanced to the jury by trial counsel, namely that R.S. had actually meant to implicate another individual by the name of "Tony' when making her initial disclosures to her mother. Therefore, the Court would find that this was a sound strategic decision by trial counsel, and that the Petitioner's arguments relating to this decision do not satisfy either prong of the *Strickland* analysis.

Fourth, the Petitioner complains that trial counsel did not call B██ P██████ to testify as a witness at trial. The Petitioner also advances the related argument that trial counsel mentioned B██ P██████ as a potential witness during opening statements and therefore his failure to call Mr. P██████ as a witness impaired counsel's credibility with the jury. The Court would find that Mr. Powell mentioned B██ P██████ and his potential testimony during his opening statement to the jury. Further, B██ P██████ was not called as a witness during the jury trial. Mr. Powell testified at the evidentiary hearing that he requested a subpoena for B██ P██████, but that Mr. P██████ did not appear pursuant to the subpoena. Furthermore, Mr. Powell was unsure whether or not Mr. P██████ was served with the subpoena, and therefore whether said subpoena could have been enforced at the time of the jury trial. The Court also finds that the Petitioner was directly asked during his case-in-chief if he had any other witnesses he wished to present, and he indicated only that he wishes to present further testimony to the jury from himself.

The Court would first note that the Petitioner bears the evidentiary burden in this Habeas Corpus proceeding. See *Stanley v. Dale*, 171 W.Va 192, 194 (1982). Aside from reading from a statement purportedly provided by B██ P██████ to a defense investigator, which was not authenticated in any manner by either party to the conversation, no showing was made by the

Petitioner as to what B___ P___'s testimony at trial would have been aside from self-serving assertions. B___ P___ was not desposed in this matter, nor was he placed under subpoena in the context of this proceeding in order to adduce testimony and try to determine what his trial testimony would have been in an effort to gauge the probable effect of his absence on the result of the jury trial. It has also not been demonstrated by the Petitioner that B___ P___ was able to be placed under subpoena prior to trial, that he was under subpoena prior to trial, or that he was willing to testify favorably to the Petitioner's case. B___ P___ is the brother of N___ P___ who, at the time, was the live-in boyfriend of R.S.'s mother. Therefore, it is just as likely that his testimony would have been favorable to the State's case. Either way, any construction of his probable testimony is pure speculation based on the record before the Court. As the Supreme Court has recently held, a failure to demonstrate the specific testimony that a potential witness can provide can be fatal to a Petitioner's effort to overcome the second prong of the *Strickland* analysis and demonstrate that the result of the proceedings would have been different but for the actions complained of by trial counsel. *State ex rel. Edgell v. Painter*, 206 W.Va 168, 173 (1999). "Further, the Petitioner did not elicit the testimony of an expert, to show how an independent expert's testimony at Petitioner's trial would have *actually* impacted or altered the evidence presented by the prosecution or the defense." *Jenkins v. Ballard*, 2016 W.Va LEXIS 264 at p. 100. (citing *Coleman v. Painter*, 215 W.Va 592, 597 (2004)). "Petitioner's speculation and conjecture are not a sufficient substitute for concrete evidence." *Id.* Therefore, the Petitioner has not met his burden with regard to the second prong of the *Strickland* analysis demonstrating that the result of the proceedings would have been different but for the actions complained of by Mr. Powell. Mr. Powell had requested a subpoena for B___ P___, and Mr. P___ had spoken to a private investigator. Therefore, it was not unreasonable or ineffective for Mr. Powell to anticipate that he would be a witness during the trial and therefore to provide the jury a preview of how his testimony would fit into the Petitioner's theory of the case.

Fifth, the Petitioner complains that trial counsel was deficient in failing to request a continuance following E___ S___ testimony that "Tony Lewis" was a real person. The Petitioner alleges that this was a revelation that counsel was previously unaware of. The Court finds that E___ S___ did offer testimony that a "Tony Lewis" stayed with her and R.S. in June 2008 and had been gone six months prior to the acts alleged in this case. The Court would also find that Mr. Powell did not move for a continuance following this testimony. However, the Court is troubled by the lack of information on "Tony Lewis" or what his testimony would be. The only evidence adduced on Mr. Lewis came during the evidentiary hearing when investigator Bryan Bargeloh identified a photograph purporting to portray Mr. Lewis. This photograph was taken pursuant to an investigation which culminated in locating Mr. Lewis in Preston County, West Virginia. Mr. Lewis could have been served with a subpoena by Investigator Bargeloh to attend and testify at the evidentiary hearing in this matter, but he was not. Therefore, the Court is left to speculate as to what his testimony would have been. This deficiency in the record weighs against the Petitioner, who has the burden in this proceeding, and impacts the second prong of the *Strickland* analysis. How is the Court to weigh the probable impact of this "Tony Lewis" on these proceedings without knowing what his testimony would be? On the basis of pure speculation, this Court is asked to reverse a jury verdict. The Court finds that Mr. Powell's failure to request a continuance to further investigate "Tony Lewis" had no cognizable impact on the proceedings pursuant to prong two of the *Strickland* analysis.

Sixth, the Petitioner makes a related complaint that Mr. Powell's investigation of "Tony Lewis" was deficient. The Petitioner alleges that more should have been done in the six months between the revelation by E███ S███ that "Tony" was a real person by the name of "Tony Lewis" and the hearing held on the Defendant's Motion for New Trial on April 7, 2011. However, it took nearly six years after the hearing on the Defendant's Motion for New Trial for the Petitioner to locate and photograph Tony Lewis. Even still, there is still no way to tell what Mr. Lewis would testify to at trial. Would this testimony be favorable or unfavorable to the Petitioner? Would it be any different from the testimony already adduced from E███ S███? Is it at all likely that Mr. Lewis would show up to court, take the witness stand, and implicate himself on these charges in any manner? As the record currently stands, the testimony adduced at trial was that Mr. Lewis has been absent from the residence of R.S. for at least six months prior to the date of the allegations against the Petitioner. Therefore, the jury was at least aware that Tony Lewis was a real person and that he did reside with R.S. at one point in time. We know little more about Mr. Lewis at this point in time, except for the fact that he is a cousin to N███ P███ (a fact adduced by Bryan Bargeloh at the evidentiary hearing.) It is the Petitioner's burden to demonstrate that, but for Mr. Powell's allegedly insufficient investigation of Tony Lewis, the result of the proceedings would have been different pursuant to the second prong of the *Strickland* analysis. By showing a photograph purporting to be of Tony Lewis, but not adducing any testimony from Mr. Lewis or even alleging what that testimony would have been, the Petitioner has not met his burden. See *Jenkins v. Ballard* at p.100. (citing *Coleman v. Painter*).

Seventh, and finally, the Petitioner alleges that Mr. Powell erred by not requesting a "re-examination" of the Petitioner so that he could clarify some allegedly incomplete responses given to questions posed by the State while the Petitioner was testifying at the jury trial. The Court would find that the Petitioner did testify on his own behalf at the jury trial on two separate occasions. The Petitioner was allowed by the Court to take the stand a second time after a recess to discuss with his counsel whether or not he wanted to present additional testimony. The Court also finds that the State asked questions of the Petitioner, which the Petitioner answered in part but then was cut-off by the Court due to providing information which the Court found was unresponsive to the question posed by the State. The question posed by the State essentially asked the Petitioner whether or not he believed the allegations stemmed from $300.00 which the Petitioner felt E███ S███ may have been "cheated out of" by the Petitioner's dealings with N███ P███ in reference to a camper. The Petitioner had previously offered testimony about the $300.00, apparently in an effort to demonstrate motivation for E███ S███, and in turn R.S., to fabricate the allegations. However, the Petitioner has failed to demonstrate what additional information he would have adduced if given the opportunity. Therefore, he has failed to demonstrate what impact, if any, the additional testimony would have had on the result of the jury trial. This is a fatal omission pursuant to prong number two of *Strickland*.

Therefore, based upon the factual findings set out above, the general standard as discussed under heading 'B', and the entirety of the record herein, the Court finds that the Petitioner's allegations of ineffective assistance of counsel in reference to Mr. Powell are without merit and do not warrant relief in Habeas Corpus. Therefore, relief under these grounds is hereby DENIED.

D. Ineffective Assistance of Counsel—Appellate Counsel Paul Marteney and Adrian
   Hoosier

The Petitioner next raises various claims of ineffective assistance relative to his appellate counsel, Paul Marteney and Adrian Hoosier. The Court will deal with these claims in the order in which they were raised in the Petition, and all of these claims will be dealt with under the same heading. The Court finds that both Mr. Marteney and Mr. Hoosier rendered representation to the Petitioner following his conviction. However, Mr. Marteney ultimately filed the Petitioner's brief. Mr. Hoosier's involvement was mostly limited to conducting the oral argument pursuant to the Petition filed by Mr. Marteney. No evidence has been adduced relating to what occurred during the oral argument before the Supreme Court. Additionally, there was no testimony adduced from either Mr. Marteney or Mr. Hoosier in this matter. The Court would find as a matter of law that all claims of ineffective assistance relating to Mr. Marteney and Mr. Hoosier's appellate representation of the Petitioner do implicate the Petitioner's Constitutional Rights, namely his Sixth Amendment Right to Counsel pursuant to the United States Constitution and Article III, Section 14 of the West Virginia Constitution, and therefore are cognizable in this Habeas Corpus proceeding.

First, the Petitioner complains that ineffective assistance of counsel resulted in an unfavorable ruling by the Supreme Court of Appeals of West Virginia. The allegation is that counsel failed to include a transcription of the hearing on the Petitioner's Motion for New Trial held on April 7, 2011 in the record on appeal. Therefore, the Supreme Court was unaware that the State's counsel during that hearing admitted to having prior knowledge of "Tony Lewis" at least two months prior to trial. As discussed above, it is alleged that trial counsel for the Petitioner was not aware of this information until E███ S███ testified at the jury trial, and this information was not disclosed by the State prior to trial. The Court finds that the Petitioner did take a direct appeal from his conviction to the Supreme Court, which resulted in a memorandum decision rendered by the Supreme Court on November 8, 2012. In that opinion, a *Brady/Youngblood* issue is raised related to the State not disclosing this information related to "Tony Lewis." The Supreme Court denied relief on that basis.

The Court notes as an initial matter that a ground for relief may not be raised during a direct appeal and subsequently raised again during a Habeas Corpus proceeding. *See* West Virginia Code §53-4A-1(b) & *Losh v. McKenzie*, 166 W.Va 762, 764 (1981). This claim was raised during the direct appeal and dealt with on its merits. *State v. Hubley*, slip no. 11-0258; 2012 W.Va LEXIS 792 at p. 13-14 Therefore, it is barred in this proceeding unless some showing can be made that ineffective assistance of counsel perhaps impacted the ruling by the Supreme Court. The Court believes that such a showing cannot be made in this instance. The Supreme Court made its ruling following an analysis of the three-factor test derived from *Brady v. Maryland*, 373 U.S. 83 (1963) and *State v. Hatfield*, 169 W.Va 191 (1982). The Supreme Court in Hubley enunciated the test as follows: "1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; 2) the evidence must have been suppressed by the State, either willfully or inadvertently; **and** 3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." (emphasis added). This test is applied in a conjunctive manner, meaning that all three elements must be satisfied, and the Court would find that the test is conjunctive in nature under the laws of this State. The shortcomings in the record

on appeal, alleged to be due to ineffective assistance on the part of Mr. Hoosier and Mr. Marteney, implicate the second prong of this test. However, the Supreme Court made two separate and independent findings that the test was not satisfied. In addition to a finding that prong two was not satisfied, the Court also ruled that prong three was not satisfied. "Furthermore, the evidence at issue was not material to the outcome of the case." *Hubley* at p.14. "According to the unchallenged testimony of the mother, Tony Lewis was not residing and did not have any contact with R.S. when the alleged touching incidents occurred." *Id.* Since there was an adequate and independent basis for the Supreme Court's decision, the Petitioner has not met his burden pursuant to *Strickland v. Washington* on this ground for relief. In other words, no showing has been made that any alleged shortcoming in the representation rendered by appellate counsel would have impacted the Supreme Court's ruling on prong three of the *Brady/Hatfield* test, and therefore the Supreme Court's overall ruling which denied relief on that point of error.

It is also worth mentioning at this point that there has been evidence submitted in this matter relating to Mr. Adrian Hoosier and his recent suspension from the practice of law in this state. The Court would specifically find that this evidence does not impact this Court's opinion on the issues raised herein. While Mr. Hoosier may have committed some misfeasance in his dealings with the Petitioner, among other clients, this did not impact the result of the proceedings as explained more fully above. This is mostly due to the fact that Mr. Marteney actually submitted the petition for appeal that is alleged to be defective in this matter, and due to this Court's findings that this petition for appeal and the representation rendered by both Mr. Marteney and Mr. Hoosier during the appellate stage of the Petitioner's case did not amount to ineffective assistance of counsel under the *Strickland* standard. The Court heard no testimony from Mr. Hoosier and no other evidence relating to what occurred during the oral argument that he conducted on behalf of the Petitioner or any other aspect of his representation.

Second, the Petitioner complains that appellate counsel failed to raise on appeal the issue that Tiffany Kiger, the victim's advocate employed by the Wood County Prosecutor's Office, was allowed to sit behind the prosecutor's table during the jury trial testimony of R.S. The Court finds that Ms. Kiger did sit behind the prosecutor's table during the testimony of R.S., as alleged, and also would find that Mr. Powell did lodge a timely objection on this point. This objection was overruled by the Court. No evidence was adduced at the evidentiary hearing from Mr. Hoosier or from Mr. Marteney. Therefore, they were not given any opportunity to explain the reason why this issue was not raised on appeal, which could have very well been an absence of supporting authority. The Court finds that the Petitioner has again failed to meet his burden pursuant to the first and second prong of *Strickland v. Washington*. Namely, the Petitioner offers no case law or other authority in support of his claim of error. Without this, how is this Court to evaluate the probable impact on the result of these proceedings of appellate counsel's failure to raise this issue on direct appeal? How is the Court supposed to evaluate counsel's decision not to include this issue on appeal or the efficacy of his research in support of said appeal? The trial court based its ruling on this objection on case law which exists allowing a victim to sit on her mother's lap during testimony, presumably finding that the presence of a victim's advocate within the sight of the victim during her testimony was even less intrusive. Therefore, there is no basis upon which to rule that appellate counsel was deficient in failing to raise this issue on appeal.

Therefore, based upon the legal and factual findings set out above, the legal standard set forth under heading 'B,' and the entirety of the record herein, the Court finds that the Petitioner's allegations of ineffective assistance of counsel in reference to Mr. Hoosier and Mr. Marteney are without merit and do not warrant relief in Habeas Corpus. Therefore, relief under these grounds is hereby DENIED.

### E. Right to a Fair Trial

The Petitioner alleges that his right to a fair trial, as promised by the Sixth and Fourteenth Amendments to the United States Constitution and Article III, Section 14 of the West Virginia Constitution. More specficially, the Petitioners allegation is that the trial judge made various statements and took various actions that impacted his right to a fair trial. As a corollary, it is also alleged that trial counsel Eric K. Powell failed to take appropriate remedial measures in response. The Court would find as a matter of law that these arguments implicate Constitutional rights and therefore are cognizable in this Habeas Corpus proceeding.

First, the Petitioner alleges that the trial court showed bias during voir dire by permitting the State to ask questions of the jury panel but curtailing Mr. Powell's ability to do the same. The Court would find that the trial judge did ask Mr. Powell during his voir dire questioning of the jury panel if he could "speed it up." However, the Court would also find that this request came after the preceding question was fully stated by Mr. Powell, and after a response was given by the jury. Furthermore, the Court would also find that Mr. Powell continued after the Court's request to ask two more questions of the jury panel before informing the Court that he was finished. No evidence was presented, despite the fact that Mr. Powell testified at the evidentiary hearing in this matter, of what additional questions he would have asked or whether he felt rushed due to this statement by the Court. It is the Court's prerogative to preside over all stages of a jury trial, and to not only conform each stage to the law of the land but to ensure that the process works in a smooth and expeditious fashion where possible. The Petitioner bears the burden of demonstrating prejudice from the trial judge's remark, in addition to demonstrating that the trial judge's remark was improper. The Court finds that the trial judge was simply carrying out his duty to expedite the proceedings. Voir dire had been ongoing for some time. Mr. Powell had just finished asking a question relating to floats in a parade, which was meant to demonstrate that memory tends to be clearer if one is asked to remember fewer things. He had gotten a response from the jury panel to that question prior to the complained-of remark. Attempting to expedite voir dire for the sake of the jurors and the witnesses was not improper. Furthermore, the Petitioner has failed to discharge his burden of proving that any prejudice resulted from this remark.

Second, the Petitioner complains of the trial judge's handling of Trooper Kocher's comments regarding *Miranda* warnings provided to the Petitioner. Specifically, the Petitioner complains that the trial judge showed impropriety by removing the jury from the courtroom to admonish Assistant Prosecutor Skogstad regarding Trooper Kocher's mention of *Miranda*. The Petitioner further complains that the trial judge provided "guidance" to Mr. Skogstad during an in-camera session outside the presence of the jury following this admonishment. The Court would find that, following the complained-of statement by Trooper Kocher, the jury was promptly removed from the courtroom and Mr. Skogstad was admonished by the Court. The Court further finds

that the trial judge did suggest that Mr. Skogstad avoid the issue by asking leading questions of Trooper Kocher. The Court would note once again that it is the prerogative of a trial judge to orchestrate a jury trial in a manner that promotes fairness to both parties and expediency. The Petitioner has made no showing, as highlighted under heading 'C' above, that this mention of *Miranda* was in any way prejudicial or improper. The Petitioner was not arrested until several days later, as the jury was informed by both counsel, and this fact was actually a part of the Petitioner's trial strategy. In the absence of any such showing, it is assumed that the ban against mentioning *Miranda* before the jury was likely just a rule adopted by this individual trial judge. That being the case, it cannot be demonstrated that a motion for mistrial or cautionary instruction would be warranted, let alone that it was improper for Mr. Powell not to make such a motion. Additionally, the Court struggles to find how this admonishment of Mr. Skogstad outside the presence of the jury conveyed any message whatever to the jury, since it occurred outside the jury's presence and knowledge. No cautionary instruction or objection was placed on the record in the presence of the jury. Therefore, there has been no showing that the jury was even aware of the reason for their absence during this point in the trial, let alone the significance of the judge's request that they be absent or the significance of what occurred outside their presence. Therefore, the Petitioner has not demonstrated any prejudice from this action by the trial judge.

Third, the Petitioner complains of the manner in which the trial judge treated him during his testimony to the jury. Specifically, the Petitioner alleges that during cross-examination by the State the trial judge admonished him within the presence of the jury in such a manner that he was prejudiced. The allegation is that he was cut off during a response to one of the State's questions and the judge's tone in stopping him—stating "Sir"—was prejudicial in and of itself. The Court would find that the Petitioner was stopped during statements which were attempted to be made following a question by Mr. Skogstad. The Court also finds that the trial judge did use the word "Sir" to stop him. However, the Court finds that the Petitioner had responded to the question posed by Mr. Skogstad before beginning a second statement with the words "And something that has not been explained that I would like to explain also is..." Mr. Skogstad lodged an objection to any further statement by the Petitioner as not being responsive to any question that was posed. The Court finds that the beginning of this statement by the Petitioner is certainly indicative of a *non-sequitur* as opposed to a further response to the most recent question. The trial court sustained that objection. Then, the Petitioner attempted to speak again despite the trial court's order sustaining the objection, stating ""You asked me why I think..." At this time, the trial court made the admonishment which is complained of in the Petition. The Court would again note that it is the trial judge's prerogative to preside over the jury trial and conform the proceedings to the law of the land. This includes controlling the examination of witnesses according the Rules of Evidence and preventing the admission of potentially harmful statements before the jury. The trial judge also is empowered to enforce any evidentiary ruling made during the trial. Here, the trial judge granted an objection by the State and ordered the Petitioner to answer the question that was asked. When the Petitioner directly disobeyed an order from the trial judge and continued to speak is when the Court stated "Sir." This was a one-word admonishment. There is nothing improper about a trial judge controlling the manner of testimony, preventing a witness from providing non-responsive testimony, or enforcing an evidentiary ruling that was already made. Furthermore, it was not improper for the trial court to use a single word to signal to the Petitioner that he was to stop speaking before he introduced potentially harmful information to the jury. The trial judge was simply exercising his judgment

and no prejudice has been demonstrated. As a corollary, it was therefore also not improper or deficient for Mr. Powell to fail to move for recusal of the trial judge for these same reasons.

The Petitioner attempts to take both the Trooper Kocher/Miranda issue and the "Sir" issue, read them together, and argue that it raises the specter of bias or impropriety by the trial judge towards his case and deference to the State. However, as stated above, these were entirely different situations. The first involved comments which the trial judge preferred not to have introduced to a jury, which were already introduced, and which the trial judge preferred not to draw any additional attention to. The second situation involved an evidentiary ruling which had already been made, which the Petitioner was apparently disregarding, and the trial judge was attempting to prevent the admission of improper and potentially prejudicial testimony before it was adduced. Therefore, reading these two situations in conjunction with one another adds little to this Court's analysis and certainly does not demonstrate impropriety or bias.

Therefore, based on the above findings of law and fact and the entirety of the record herein, the Court finds that the Petitioner's allegations under this heading are without merit and do not warrant relief in Habeas Corpus. Relief under these grounds is hereby DENIED.

## F. Insufficient Evidence to Support the Jury's Verdict

The Petitioner alleges that the evidence adduced at trial was insufficient to support the jury's verdict of guilty on the count of Sexual Abuse in the First Degree for which he was convicted. Specifically, the Petitioner alleges that the jury received insufficient evidence establishing that he was the perpetrator. In other words, he was never positively identified by the victim. The Court would find that the victim, R.S., did fail during trial testimony to perform an in-court identification of the Petitioner. However, the Petitioner points to no authority requiring such evidence. The record is replete with circumstantial evidence demonstrating that the Petitioner was the perpetrator, and upon which the jury apparently relied in arriving at the guilty verdict. First, the testimony revealed that R.S. disclosed the inappropriate touching to her mother at a specific time when the Petitioner was the only male within the home, and during a general time frame when the Petitioner was the only guest staying there. R.S. pointed towards the living room where the Petitioner was located when asked who had performed these acts on R.S. Evidence was adduced demonstrating an opportunity for the Petitioner to commit this act, when he and R.S. were present at the same location at the same time without any other adults present. This was in the vehicle belonging to E███ S███ and N███ P███████, when both R.S. and the Petitioner were seated in the back seat. Furthermore, R.S. identified her perpetrator as "Tony" to her mother, to Trooper Kocher, and to Maureen Runyon, and circumstantial evidence was adduced showing that R.S. did refer to the Petitioner as "Tony." This is not a complete recitation of all of the evidence present in the record.

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt

so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."

Syl Pt. 3, *State v. Guthrie*, 194 W.Va 657 (1995). "The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of witnesses." Syl Pt. 2, *State v. Bailey*, 151 W.Va 796 (1967). The Petitioner is attempting to revisit and second-guess a jury verdict. Trial by jury is perhaps the most sacred and treasured aspect of our criminal justice system, and one that deserves the appropriate respect accompanying such a station. Therefore, based upon the standard enunciated above, the findings of fact above, and the entirety of the record herein, the Court finds that relief in Habeas Corpus on this ground is not merited. This assignment of error is DENIED.

## G. Cumulative Error

The Petitioner alleges that his right to a fair trial was not vindicated due to the cumulative effect of the ineffective assistance that he received during his trial and the direct appeal as well as the errors committed by the trial court. However, as stated under the various headings above, the Court has not found that any of the Petitioner's assertions merit any relief. Therefore, it cannot be said that they had any cumulative effect on the Petitioner's trial. Relief in Habeas Corpus based on this theory is therefore not merited and is therefore DENIED.

## H. Conclusion

Therefore, based upon a careful review of the record in this matter, including all relevant transcripts, pleadings, and the testimony adduced at the omnibus evidentiary hearing, the relief prayed for within the various Petitions filed in this matter is hereby DENIED as having no merit based upon the relevant standards discussed above and for the various reasons discussed above. The Defendant has waived any issue not raised in this matter pursuant to *Losh v. McKenzie*. The Court finds this waiver to be knowing, intelligent, and voluntary pursuant to the Court's questioning of him on the record at the evidentiary hearing regarding the effect of not raising any particular ground in this omnibus proceeding and the Petitioner's clear indication on the record of his understanding of this as well as the placement of his initials next to various grounds on the various *Losh* checklists filed herein. The issues so raised in the Petition do not merit relief in Habeas Corpus as more fully set out above, therefore the Defendant is remanded to the custody of the West Virginia Division of Corrections to serve the remainder of the sentence imposed by the Court in 09-F-167.

It is hereby ORDERED that the Petition for Writ of Habeas Corpus be DENIED. This is

a final Order and the Clerk is ORDERED to remove this case from the docket of the Court. The

Clerk shall send copies to counsel for the Petitioner and Respondent.

ENTER:

ROBERT A. WATERS, JUDGE

STATE OF WEST VIRGINIA
COUNTY OF WOOD, TO-WIT:

I, CAROLE JONES, Clerk of the Circuit Court of
Wood County, West Virginia, hereby certify that
the foregoing is a true and complete copy of an
order entered in said Court, on the __7__ day of
February, 2019, as fully as the same appears
to me of record.

Given under my hand and seal of said Circuit
Court, this the __7__ day of March, 2019.

Clerk of the Circuit Court of
Wood County, West Virginia

By: _____, Deputy